# UNITED STATES DISTRICT COURT
# THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANTONIO ANDERSON, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 4:11CV00740 AGF |
| STATE OF MISSOURI, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri State prisoner Antonio Anderson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 4, 2003, Petitioner was convicted by a jury of first degree murder (Count I) and armed criminal action (Count II), arising out of the July 4, 2001 shooting death of Sherman Teague. Petitioner was sentenced on October 14, 2003, as a persistent offender to life without the possibility of probation and parole, and life imprisonment, to be served concurrently. His convictions and sentences were affirmed on direct appeal. Petitioner's motion for state post-conviction relief was denied following an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of state post-conviction relief.

For federal habeas relief, Petitioner claims that his constitutional rights were violated by (1) the trial court allowing into evidence his "coerced statement"; and (2) the trial court allowing a witness's "in-court identification."

## BACKGROUND

The evidence established that on July 4, 2001, the victim, who was 23 years old, was driving a car in North St. Louis, Missouri, with his then seven-year old nephew, Darvell Teague ("Darvell"). The victim stopped the car alongside a sidewalk where Petitioner, then 19 years old, was standing, and the victim and Darvell got out of the car. Darvell did not previously know Petitioner. The victim and Petitioner began arguing. Petitioner went into a nearby apartment and returned with a .22 caliber semi-automatic pistol. While the victim's back was turned, Petitioner fired two shots at him knocking him to the ground. Petitioner then fled the scene. The victim managed to get back into the car with Darvell and drive to Darvell's house, two and a half blocks away. As they approached the house, the victim passed out and his car hit several cars parked on the street. Darvell hit his head on the dashboard. The victim died in the car in front of the house shortly after he lost consciousness.

Police responded to the scene, where Darvell told them that he witnessed a man with braids in his hair shoot his uncle in the back on the sidewalk and that he would recognize the shooter. He directed the police to the site of the crime. There they found a spent .22 caliber shell casing on the sidewalk. The police filed a report in which they indicated Petitioner as a suspect and issued a "wanted" for Petitioner.[1] An autopsy revealed that the victim died from a .22 caliber bullet that entered through his back, hit his lung, and came to rest around the left collarbone. The firearm used to kill the victim

---

[1] The record does not indicate how or why the police identified Petitioner as a suspect.

was not recovered and without it the police were unable to tell if the bullet came from the shell casing found at the scene of the shooting.

Petitioner was arrested nine months later, on April 28, 2002, in the early hours of the morning, when following a "pedestrian check," the police were put on notice that he had outstanding bench warrants and a homicide warrant. Petitioner was taken to police headquarters in St. Louis City and placed in a holdover cell. Detective Mathias Hanewinkel, who had not previously been involved in the case, was notified of Petitioner's arrest, and at approximately 9:30 a.m. took Petitioner from his holdover cell and escorted him to an interview room. Petitioner was questioned over the course of the morning and confessed to shooting the victim. Petitioner agreed to make a videotaped statement of his confession. Hanewinkel booked Petitioner for the victim's murder and arranged for a line-up of five men with Petitioner in the second position from the left. Darvell was not available to identify Petitioner at the line up; however, a photo of the line-up was taken.

Petitioner filed a motion to suppress statements claiming that Petitioner's oral and videotaped confession to the murder of the victim were not voluntary, were made without Petitioner being informed of his constitutional rights, and were the direct result of an unlawful arrest. On September 2, 2003, a hearing was held at which Hanewinkel and Petitioner testified. Hanewinkel testified that Petitioner initially denied knowing the victim and having anything to do with the murder. Per Hanewinkel, after Petitioner was informed that witnesses had identified him as the shooter, Petitioner admitted to being at the location of the shooting, and that following an argument with the victim he obtained a

3

gun from a nearby apartment, loaded it, returned outside, and fired two shots at the victim. Hanewinkel testified that Petitioner agreed to make a videotaped statement regarding his involvement in the shooting. Hanewinkel testified that Petitioner was informed of his *Miranda* rights on four separate occasions throughout his questioning, including before both his oral confession and videotaped statement. He testified that at all relevant times Petitioner indicated that he understood his *Miranda* rights and voluntarily signed *Miranda* warning and waiver forms. *Id*. at 120-28.

Petitioner testified that he was kept in a holding cell for about two days before he was interrogated and that Hanewinkel pushed him, punched him in the stomach, and yelled at him when he initially denied any involvement in the victim's murder. Petitioner testified that he was going through withdrawal from heroin at the time, to which he had been addicted since he was 14½ years old, leaving him confused and unable to handle questioning. He stated that the officers told him that he could go home when they finished interrogating him so he tried to hurry the process along by telling them what he thought they wanted to hear; he was focused on his need for heroin. He testified that he confessed to being at the location of the shooting and that he consented to make a videotaped statement. He testified that he was not informed of his *Miranda* rights. He acknowledged that he signed several *Miranda* waiver forms including one after his videotaped statement, but claimed that he did not know or read what he was signing due to his withdrawal. *Id*. at 152-64.

The trial court denied Petitioner's motion to suppress his oral and videotaped statements because it found that they were not coerced, that Petitioner had been advised

of his *Miranda* rights on at least four different occasions, including prior to interrogation, and that Petitioner's testimony that he was physically coerced prior to his videotaped statement was not credible. *Id.* at 167-68.

Trial commenced on September 2, 2002. All the evidence was presented on one day, September 3, 2002, with five witnesses testifying for the state (Darvell, Hanewinkel, one of the officers who responded to the car accident and investigated the scene of the shooting, a firearms expert, and the forensic pathologist who conducted the autopsy) and Petitioner testifying for himself.

The trial transcript indicates that the prosecutor showed Darvell the photo of the line up one week prior to trial and again on the morning of trial, before the trial began. While on the stand, Darvell was shown the photo and asked if the shooter was in the photo, to which Darvell responded, "Yes." Before Darvell could indicate which man in the photo was the shooter, the court sustained defense counsel's objection to such testimony. Darvell was then asked whether the man he saw shoot his uncle was in the courtroom and he responded, "No." The prosecutor asked, "Would you look through all the courtroom please?" Darvell responded, "No." The prosecutor asked, "No?" Before Darvell could respond, defense counsel asked for a bench conference and the judge agreed.

At the bench conference, the prosecutor explained to the judge that Darvell could identify Petitioner from the photo, noting that Petitioner currently looked different from how he looked in the photo. The court observed that in the photo Petitioner had braids. The court again sustained defense counsel's objection to Darvell identifying Petitioner in

5

the photo, subject to reconsideration later in the trial. (Resp. Ex. 1, Trial Tr., at 296-98.) It appears from the record, that after he completed his testimony, Darvell remained in the courtroom in a back row seat. *Id.* at 305.

Later in the trial, the court admitted the photo of the line-up into evidence. Darvell was recalled to the stand, and over defense counsel's objection, he identified Petitioner in the photo of the line-up as the shooter. He testified that the prosecutor had shown him the photo before trial and that no one, including the prosecutor, told him which person to pick out or influenced him to pick out Petitioner. On cross examination, when asked by defense counsel whether the prosecutor told him that he (Darvell) would be asked in the courtroom to identify the man who shot his uncle, and whether the prosecutor told him that the man would be seated at the defense table, Darvell answered in the affirmative to both questions. On redirect, Darvell identified Petitioner in the courtroom as the shooter, and testified that the prosecutor did not tell him to "pick him out." He explained that when asked earlier if he saw the shooter in the courtroom, he could not "see up front," but when counsel approached the bench for the bench conference, he saw Petitioner. *Id*. at 387-92.

On cross-examination, Hanewinkle stated that Petitioner did not appear to be withdrawing from heroin at the time of the interrogation. Petitioner's videotaped confession was played for the jury. Petitioner testified along the lines of his testimony at the suppression hearing that his oral and videotaped statements were involuntary. His defense at trial was that his confession was coerced and not true. Defense counsel attempted to ask questions about Petitioner's heroin addiction and the effects of

6

withdrawal. The prosecutor objected and the trial court sustained the objection, only allowing questions pertaining to whether Petitioner knew what he was doing when he gave his videotaped statement.

**Direct Appeal and State Post-Conviction Proceedings**

Petitioner raised two issues on direct appeal. First, Petitioner argued that his due process rights were violated by the trial court allowing Darvell to identify Petitioner from the photo of the line-up and to subsequently identify Petitioner in person, when he had been unable to do so absent use of the photo. Petitioner noted that the only witness of Darvell's initial out-of-court viewing of the photo was the prosecutor, and argued that use of the photo at trial caused and tainted the direct in-court identification.

The appellate court rejected this argument finding that Petitioner had failed to present any evidence that the identification of Petitioner in the photo was the result of suggestion or encouragement by the prosecutor. The court reasoned further that even if the photo identification was suggestive, this did not affect the reliability of Darvell's direct identification of Petitioner in the courtroom, under the totality of circumstances, including Darvell having had sufficient opportunity at the time of the crime to observe the shooter, and having told the police at the time that he would recognize the shooter. In sum, the appellate court concluded that the trial court did not abuse its discretion in allowing the identification testimony at trial. (Resp. Ex. 5 at 3-5.)

Second, Petitioner argued that the trial court erred in sustaining the prosecutor's objection to Petitioner's testimony regarding the nature of withdrawal from heroin. The appellate court found that Petitioner did not preserve this issue for review because he did

7

not make an offer of proof regarding the excluded evidence. Reviewing the claim for plain error, the appellate court rejected the claim because there had not been a miscarriage of justice, given Petitioner's "substantial testimony" regarding the voluntariness of his statements. *Id*. at 5-6.

For state post-conviction relief, Petitioner claimed that his trial counsel was ineffective for failing to interview and subpoena alibi witnesses, and appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in overruling Petitioner's motion to suppress his statements. Following an evidentiary hearing, the motion court rejected both claims. On the second claim, the only one Petitioner raised on appeal, appellate counsel had testified at the hearing that she decided, based on her many years of experience as a criminal lawyer, and her review of the transcript of the suppression hearing and the court's ruling on the motion, not to raise the matter on appeal, and to only raise the two issues that were raised. The Missouri Court of Appeals affirmed the denial of post-conviction relief.

**Federal Habeas Petition**

As noted earlier, Petitioner raises two grounds in his petition for the writ of habeas corpus: that the trial court erred in allowing into evidence his (oral and videotaped) "coerced confession," and in allowing Darvell's identification testimony.[2] Respondent argues that federal habeas relief must be denied with respect to Petitioner's first claim because it was not raised on direct appeal and was thus procedurally defaulted.

---

[2] The Court notes that the habeas petition contains the notation by Petitioner "See Attached Pages" in the sections asking for support of his claims, but no pages were attached to the petition.

Respondent argues that the state court's adjudication as to the second claim was legally and factually reasonable, precluding federal habeas relief.

## DISCUSSION

**Procedural Default**

"Ordinarily, a federal court reviewing a state conviction in a [federal habeas corpus] proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). Missouri inmates procedurally default claims which should have been but were not presented on direct appeal. *Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006); *Tolen v. Norman*, No. 4:10 CV 2031 RWS, 2014 WL 2765282, at *9 (E.D. Mo. June 18, 2014). Where a claim is defaulted, a federal habeas court will consider it only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice in that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Skillicorn v. Luebbers*, 475 F.3d 965, 976-77 (8th Cir. 2005).

Here, the Court finds that Petitioner's claim that the trial court erred in allowing into evidence his oral and videotaped confessions was procedurally defaulted in state court because it was not raised on direct appeal. Petitioner has not asserted, nor can the court discern, any cause for the default. Appellate counsel's failure to raise the issue on direct appeal does not provide cause here because the state Court of Appeals properly found that appellate counsel was not ineffective in this regard. *See Evans v. Luebbers*,

371 F.3d 438, 445 (8th Cir. 2004). Nor does Petitioner meet the standard for showing a miscarriage of justice.

**Standard of Review for Claim Properly Before the Court**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also Linehan v. Milczark*, 315 F.3d 920, 924-25 (8th Cir. 2003).

**Identification Testimony**

Due process challenges to a conviction based on allegedly unreliable identification

testimony generally are reviewed under a two-step test: The first step is to determine whether a pre-trial identification procedure was "impermissibly suggestive"; if so, the second inquiry is whether, under the totality of the circumstances, the suggestive identification created "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *see also Palmer v. Clarke*, 408 F.3d 423, 435 (8th Cir. 2005). Those identifications which are reliable – where the witness's perception of the suspect is unaided by the suggestive procedure – are admissible.

In assessing reliability of an in-court identification, a court considers: (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the event and the identification. *Palmer*, 408 F.3d at 435 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)); *Clark v. Caspari*, 274 F.3d 507, 511 (8th Cir. 2001).

Here, the Court is troubled by several aspects of Darvell's identification testimony. His initial viewing of the photo of the lineup, as well as his second viewing the morning of trial, were conducted with the prosecutor being the only other person present. Darvell was initially unable to identify Petitioner in the courtroom, and then apparently remained in the courtroom until he was recalled to the stand at which point he could identify Petitioner. Darvell was only seven years old at the time of the crime and approximately two years had passed between then and the time of his identification. And Darvell testified, albeit not strongly, that the prosecutor told him the shooter would be

11

seated at the defense table.

Nevertheless, the Court cannot say that the state appellate court's adjudication of this claim was unreasonable. Petitioner does not assert, nor is there any suggestion that the lineup itself was suggestive. Darvell testified that at the pre-trial viewings of the photo of the lineup, the prosecutor did not suggest to him whom in the lineup to pick out. Darvell offered a reasonable explanation as to why he could not identify Petitioner when he (Darvell) was on the stand for the first time. And indicia of reliability are present, as the state appellate court noted – Darvell had a good opportunity to view Petitioner at the time of the crime, Darvell's degree of attention would likely have been heightened, and he told police the shooter had braids in his hair (which the record indicates was accurate), and that he would recognize him. In sum, the Court concludes that habeas relief is not warranted on this claim.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner=s claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. ' 2254(d)(2). *See Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Antonio Anderson for a writ of habeas corpus is **DENIED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of July, 2014.